Joseph Lief, J.
Petitioner, the unsuccessful candidate for the Democratic nomination for District Attorney of Nassau County at the primary election held June 18 last, instituted this proceeding pursuant to subdivision 2 of section 330 of the Election Law for an order directing the holding of a new primary election. The order to show cause was made June 25, 1968 and first appeared on the calendar at Special Term July 1, 1968. Thereafter, it was adjourned seven times until it came on before me on the morning of August 13.
The petition on which the order to show cause was issued alleged that there were many instances of irregularities, illegalities and fraud, without setting forth in detail the particulars thereof. The failure to do so is understandable in view of the haste made necessary by the requirement of subdivision 2, that *916 the proceeding “ be instituted within ten days of such primary election ”. The allegations of the petition were thereafter supplemented by additional information. Although there were numerous items of complaint, the contentions were ultimately reduced to two principal areas. First the petitioner contended that approximately 1,150 persons had voted in the Democratic primary in excess of the number of Democrats who had signed the “ buff ” cards and second, that some 350 enumerated persons alleged to have been enrolled as Republicans or whose enrollments were missing, blank or void had voted in the Democratic primary.
It early became apparent that there were literally several thousand votes which were being questioned although the petitioner indicated a willingness to limit his claim to the two categories which have been described and these totaled approximately 1,500. No effort was made to submit any specific evidentiary matter with respect to any other category of votes questioned. The accuracy of petitioner’s claims was disputed in the papers finally submitted before me on August 13,1968 and in the oral argument. It became obvious that the proceeding could not be determined upon the papers alone but would require a hearing.
Because of the time which had elapsed and the approaching days of registration and election and the formidable physical and mechanical problems anticipated, this court repeatedly cautioned the parties that it was of the utmost urgency that the matter be expedited. The court also sought to impress the petitioner with the fact that the final burden of proof rested on his shoulders. I suggested that the parties meet, review the records and endeavor to clarify and limit the items which the court would have to review. They set about doing that and teams of workers were supplied by the petitioner and the respondents. In an effort to expedite the matter and mindful of the pressure of the calendar, whenever other assignments permitted the court met with the parties at Chambers and .the Board of Elections during the day and on several occasions after usual hours and sought to accelerate the process which continued until Friday, August 30,1968. On that day the court advised the parties they would have to be prepared to give proof on Tuesday morning, September 3.
At the hearing it seemed, though it was still arguable, that the parties may have substantially reduced the number of questioned votes and signatures. As a result of the joint review of the records by the parties the petitioner’s claim of 1,150 persons who had been permitted to vote in the Democratic primary in *917 excess of the Democrats who had signed the 1 ‘ buff ’ ’ cards was reduced to 212. Of this number 190 were conceded by the respondents. Thus petitioner conceded an inaccuracy of more than 80% of his original claim.
In addition, the 350 names of persons who had been enrolled Republicans or whose enrollment slips were blank, missing or void, had been reduced by the recognition that some of the named Republican voters actually voted in areas where there was a Republican primary. Contest continued with respect to the remaining names. It appeared that the petitioner’s lists had other inaccuracies concerning enrollments. However, whatever .the number that remained of the 350, it could not have increased the number of persons in the first category (that is, the number of persons who had voted in the Democratic primary in excess of the number of Democrats who signed “ buff ” cards). The vote of every nonDemocrat who voted in the Democratic primary would have been reflected in the total votes cast in excess of the number of Democrats who signed “buff” cards. The only way in which the vote of an individual who had been an enrolled Republican or whose enrollment blank was missing, blank or void, could have created additional irregularities would be if in fact these persons voted in place of enrolled Democrats who signed the “buff” cards. No evidence was submitted on this hearing nor was any effort made to offer proof in this respect, nor was there any proof offered to show that any of these persons did in fact vote. It is apparent that this evidence could not be supplied by a review of the books.
The court asked the petitioner to submit his proof. He was not prepared with witnesses and offered only himself as a witness. He did not have any personal knowledge of any of the facts which were necessary to the proof other than those facts which were shown on the books and records themselves and even as to all of those he was not personally knowledgeable. It then became apparent to the court that the petitioner was not prepared to go forward and could not prove any irregularities beyond the 190 or possibly the 212 in the first category.
It became apparent that in order to try the issues raised by the petitioner his proof would have to be prepared and submitted in the courtroom and this would have entailed an examination of the records of many of the more than 900 Election Districts throughout the county, and the presentation of oral proof by a countless number of witnesses which the petitioner was obviously unprepared to do. In addition, the court was advised that approximately 3,000 cards had been removed from the registration books; that 10,000 new cards were in course of preparation *918 and insertion; that registration was continuing; and that the registration books had to be prepared for the approaching registration dates.
It has been held that where a hearing could not have been completed in time for a new primary to have been held and the determination made ‘ ‘ in time for a substantial compliance with the statutes by officials charged with the duty of preparing for the holding of the election ” the court would have to dismiss the contest as moot (29 C. J. S. Elections, § 127, p. 370).
Section 330 of the Election Law provides that a proceeding questioning the primary election must be brought on within 10 days. Obviously this is so that a determination may be made promptly (cf. Matter of Breitenbach v. Heffernan, 245 App. Div. 374) and to that end the provision has been strictly construed (Matter of Ullman v. Power, 36 Misc 2d 1015, affd. 17 A D 2d 792, affd. 12 N Y 2d 724). The Election Law is replete with evidence of the legislative intention that all pre-election matters should be completed promptly during September so as not to defeat and impair the election process (cf. Election Law, §§ 306, 311, as amd. by 1968, ch. 27). This was not an instance in which the petitioner sought the review of an election or the ordering of a new one in one Election District or even an Assembly District. His attack was directed to an entire populous county.
This court is not unmindful of the time and effort expended by the petitioner and respondents over the past weeks. However, when the petitioner was unprepared to proceed with his proof when called upon to do so on September 3, the court was constrained to dismiss the proceeding.